# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**NADINE WASHINGTON,**
**And SHUAIB RUSHDAN**

      **Plaintiffs,**                  **Civil Action No.:**

   **v.**

**VENSURE HR, INC., d/b/a**
**VENSURE EMPLOYEE**
**SERVICES, INC.**

      **Defendant.**

## COMPLAINT AND JURY DEMAND

**COMES NOW** Nadine Washington ("Washington") and Shuaib Rushdan ("Rushdan") (collectively referred to as "Plaintiffs") by and through their undersigned attorney, to hereby file their Complaint and Jury Demand against Vensure Employer Services, Inc. ("Defendant", "the Company" or "Vensure") as follows:

1

## NATURE OF THE ACTON

1. Washington brings this civil action to recover damages against Defendant for its violation of 42 U.S.C.A. § 2000e-3(a), as amended, Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. §1981 ("Section 1981") because her race, color or ethnicity were a motivating factor in Defendant's decision to terminate her employment. Washington's allegations and claims are described more particularly in Counts I and II as set forth herein below.

2. Washington seeks economic damages of back pay, lost benefits, and front pay. Additionally, Washington seeks noneconomic compensatory damages, punitive damages as well as their attorneys' fees and costs of litigation. Washington also petitions the court for injunctive and declaratory relief as appropriate.

3. Rushdan brings this civil action to recover damages against Defendant for its Section 1981 because his race, color or ethnicity were a motivating factor in Defendant's decision to terminate his employment. Rushdan's allegations and claims are described more particularly in Count III as set forth herein below

## PARTIES

4. Washington is an individual and a resident of the State of Georgia.

5. Washington is an African American female.

6. Rushdan is an individual and a resident of the State of Georgia.

7. Rushdan is an African American male of West Indian descent.

8. Defendant is a foreign profit corporation registered with the Georgia Secretary of State Corporations Division.

9. Defendant operates and exists under the laws of the State of Georgia.

## SUBJECT MATTER JURISDICTION

10. This Court has subject matter jurisdiction concerning Plaintiffs' civil action pursuant to 28 U.S.C. §1331 as the allegations in this civil action concern the laws of the United States of America.

## PERSONAL JURISDICTION

11. Defendant may be served with process concerning this civil action through its registered agent, registered with the Georgia Secretary of State,

Cogency Global Inc., 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia 30076.

## VENUE

12.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the employment practices and other conduct engaged in by Defendant concerning Plaintiffs Complaint occurred in this District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

13.     Washington filed a Charge of Discrimination, Number 540-2020-01064, against Defendant with the EEOC on December 17, 2019. (See Exhibit No. 1).

14.     On August 10, 2020 the EEOC issued Washington a Right to Sue letter for EEOC Charge Number 410-2019-08383 ("Right to Sue Letter"). (See Exhibit No. 2)

15.     Washington has filed this present civil action within 90 days of receiving her Right to Sue Letter.

16.     Administrative prerequisites have been met prior to filing this civil action.

# FACTUAL ALLEGATIONS

17. Plaintiffs incorporate by reference paragraphs 1 through 16 hereinabove as though set forth fully and separately herein.

18. Defendant is an end-to-end full-service business solutions provider for payroll, benefits, human resources, and risk management.

### *Nadine Washington*

19. Washington was hired by Defendant on or about June 2017 to work as a full-time Sales Development Manager at its Duluth, Georgia location.

20. As a Sales Development Manager Washington's job responsibilities included supervising the day-to-day job responsibilities of several sales representatives working from the Company's Duluth, Georgia location.

21. Throughout her employment Washington performed well in her position as Sales Development Manager.

22. On or about September of 2019 Defendant hired Phil Urso ("Urso") as its new Chief Sales Officer and Shawn Premo ("Premo") as its Vice President of Sales Analytics.

23. Urso and Premo are Caucasian males.

24. Upon Urso and Premo's arrival at Vensure, they systematically began engaging in various actions to effectuate the termination of Plaintiff's employment because she was "not the right fit" given their preference for hiring and working with other Caucasians.

25. On or about October 2019 the Company immediately posted a position for a Duluth call center manager in an attempt to marginalize and eliminate Washington's job.

26. Upon learning that this position was substantially the same as her position, Washington confronted the Company about this indirect attempt to eliminate position as Sales Development Manager with the Company.

27. Upon information and belief, after she confronted the Company the posting was removed.

28. Next, soon thereafter, the Company hired approximately 10 new sales representatives.

29. As the Sales Development Manager, Washington's responsibility was to supervise these new sales representatives; however, she was never introduced to any of the 10 new sales representative as their supervisor or allowed to fulfill her supervisory responsibilities concerning these new employees.

30. Washington was humiliated and embarrassed by the Company blatantly being disregarding her and failing to acknowledge her as a supervisor.

31. She went to work each day in disgrace knowing that her new coworkers thought less of her as she was supposed to be their supervisor but never introduced as such.

32. She also had to deal with the daily embarrassment of her new managers blatantly disrespecting her role in the workplace by taking this action with impunity.

33. Next, shortly thereafter, Washington was informed that a newly hired sales representative, William Kenimer, would serve in a dual role as a sales representative and supervisor.

34. William Kenimer ("Kenimer") is Caucasian.

35. Soon thereafter, Washington quickly began to realize that more of her responsibilities as Sales Development Manager were being shifted to Mr. Kenimer and her role was actively being marginalized.

36. Again, she complained and raised objection about what was occurring right before her eyes. This exacerbated the humiliation and embarrassment she was already feeling.

37. Prior to joining Vensure, Washington worked as an Area Sales Manager as well as a Vice-President of Sales and Marketing.

38. Upon information and belief, prior to joining Vensure, Kenimer worked as a sales representative and a retail associate.

39. During Premo's tenure as Vice-President of Sales Analytics a complaint was brought to his attention about an employee making an insulting racial remark to an African American referencing grape Kool-Aid.

40. Instead of disciplining this employee, Premo promoted him to a team lead.

41. Premo later joked about the employee's racial remark with Washington asking her sarcastically "you don't know about Grape Kool Aid?"

42. Washington was insulted and humiliating by Premo's racial joke and she viewed his joke along with the fact that the perpetrator of this statement was promoted as a very revealing glimpse of his mindset towards African Americans in Vensure's workforce.

43. Washington perceived Premo's actions and comment as belittling and a reflection that he did not value the African American employee in the Vensure work force.

44. Similarly, Urso made a racial remark to Washington, telling her a story about a being the only "honkey" in a bar full of black people.

45. Likewise, Washington was offended by Urso's comment and viewed it as indicative of being around African Americans.

46. Premo and Urso did not view Washington as like them or one of them because of her race and/or ethnicity; accordingly, this was a motivating factor in their decision to terminate her employment.

47. On December 12, 2019, four months after Urso and Premo's arrival Defendant terminated Washington's employment claiming that that her position was eliminated as part of a reduction in force for financial reasons.

48. Vensure's reasons for terminating Washington's employment are pretext. The fact of the matter is that the Company had made a series of recent hires on or about the time of her termination so Washington's termination was not for financial reasons.

49. Also, the duties that needed to be performed by the Sales Development Manager were not eliminated but shifted to a lesser qualified Caucasian employee.

50. Although they had effectively removed her from her position during her employment, after she was officially terminated, Washington an African American was replaced by Kenimer a Caucasian.

51. Upon information and belief, Urso and/or Premo made the decision or exerted influence concerning the decision to terminate Washington's employment.

## Shuaib Rushdan

52. Rushdan incorporates by reference paragraphs 1 through 51 hereinabove as though set forth fully and separately herein.

53. Rushdan was hired by Defendant on or about April 2018 to work as a full-time SDR (Sales Development Representative) at its Duluth, Georgia location.

54. On or about February 2019 Rushdan received a transfer to work in the marketing department as a project coordinator at the Company's Duluth location.

55. As a project coordinator Rushdan's core job responsibilities included guiding the direction of the subsidiary site peo.com and eventually reduced to writing block posts for lesser division partners.

56. In his position as SDR (Sales Development Representative) both Urso and Premo were his direct managers.

57. Rushdan was performing well in his position; nevertheless, shortly after receiving this position, he quickly began to realize that more of his job duties as project coordinator began to be shifted to the newest & biggest division partner

11

Avitus Group, a primarily white-dominant workplace from Billings, Montana and his role as project coordinator was actively being marginalized.

58. Realizing what was occurring Rushdan raised his concerns with his manager Hyun Kim but he could never get a direct answer.

59. On July 13, 2021 Defendant terminated Rushdan's employment.

60. Rushdan termination had nothing to with a violation of any work rules, policies, procedures or misconduct.

61. On the Georgia Department of Separation Notice issued to Rushdan, Defendant states that he was terminated from employment because his position was eliminated.

62. At the time of his termination a Caucasian employee working for Defendant at the Duluth Office, Ian Henry ("Henry"), was performing substantially similar duties; however, was not fired.

63. Shortly after his termination, upon information and belief, Defendant moved a Caucasian female, Amanda Scherer, into Rushdan's position to perform the duties ascribed to the position he was eliminated from.

64. Throughout his employment at Vensure Rushdan observed that a significant amount of African Americans were either fired, resigned or had their positions eliminated in comparison to Caucasian employees.

65. As a result, there was a noticeable shift in the reduction of African American employees and increase of Caucasian employees.

## COUNT I

(Racial Discrimination in Violation of Title VII, 42 U.S.C. § 2000e, et seq.)

66. Washington incorporates by reference paragraphs 1 through 65 hereinabove as though set forth fully and separately herein.

67. Defendant violated 42 U.S.C.A. § 2000e-3(a) because Washington's race, color, or ethnicity was a motivating factor in the decision to termination her employment and as a result Defendant is liable to Washington for damages she suffered including but not limited to back pay and front pay, her loss of benefits, and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

68. Higher-level management officials at Vensure acted with malice or reckless indifference to Washington's federally protected rights under Title VII, so she is therefore entitled to recover punitive damages.

## COUNT II

(Racial Discrimination in Violation of Section 1981)

69. Washington incorporates by reference paragraphs 1 through 68 hereinabove as though set forth fully and separately herein.

70. Defendant violated Section 1981 because Washington's race, color, or ethnicity was a motivating factor in the decision to termination her employment and as a result Defendant is liable to Washington for damages she suffered including but not limited to back pay and front pay, her loss of benefits, and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

71. Higher-level management officials at Vensure acted with malice or reckless indifference to Washington's federally protected rights under the Section 1981, so she is therefore entitled to recover punitive damages.

## COUNT III

72. Rushdan incorporates by reference paragraphs 1 through 71 hereinabove as though set forth fully and separately herein.

73. Defendant violated Section 1981 because Rushdan's race, color, or ethnicity was a motivating factor in the decision to terminate hid employment and as a result Defendant is liable to Rushdan for the damages he suffered including but not limited to back pay and front pay, her loss of benefits, and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

74. Higher-level management officials at Vensure acted with malice or reckless indifference to Rushdan's federally protected rights under Section 1981, so he is therefore entitled to recover punitive damages.

## JURY TRIAL DEMAND

75. Plaintiffs requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE** based on the above stated claims that Defendant has violated Plaintiffs' rights afforded to her under Title VII of the Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e, et seq., 42 U.S.C. §1981, Plaintiffs respectfully requests that this Court enter judgment in her favor and against Defendant, and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to compensation for her emotional distress, mental anguish and inconvenience;

B. Back pay and lost benefits;

C. Front pay;

D. Punitive damages;

E. Attorneys' fees and costs of this action;

F. Pre-judgment and post-judgment interest at the highest lawful rate; and

G. Such further relief as the Court deems just and proper.

Respectfully submitted this 20th day of December 2021.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: s/ *Jermaine A. Walker*

Jermaine "Jay" A. Walker
HKM Employment Attorneys LLP
3355 Lenox Road, Suite 705
Atlanta, Georgia 30326
(telephone) 404-301-4020
(fax: same #) 404-301-4020
jwalker@hkm.com
**Attorney for Plaintiff**